**In re Jose Pascual HERNANDEZ, Debtor.**

**Bankruptcy No. 99–15151.**

United States Bankruptcy Court, D. Puerto Rico.

Feb. 3, 2000.

---

8. The Court notes that the discharged debt totals $4,900, and the debt excepted from discharge today is $1,350.

Carlos Piovanetti Rivera, San Juan, Puerto Rico, for plaintiff/movant.

Juan Castañer Vélez, Bayamón, Puerto Rico, for defendant/debtor.

## MEMORANDUM OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Bankruptcy Judge.

This case came before the Court on January 4th, 2000 for a hearing on the motion filed by secured creditor Edwin Meléndez Rosa (hereinafter "the Movant") requesting the lift of stay pursuant to Section 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d). The Movant argues that the property, which is the subject of the motion for relief of stay (hereinafter "the Property"), is not property of the estate within the meaning of Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, because the debtor José Pascual Hernández (hereinafter "the Debtor") filed his petition for bankruptcy after the public auction and judicial sale of the property were held. In his reply, the Debtor challenges the validity of the conveyance to the Movant of title to the Property. The Debtor contends that relief from the stay should not be granted because the state court judgment and the foreclosure sale violated the local statutory provisions governing said proceedings. After consideration of the arguments and evidence presented by both parties, the Court granted the relief requested. *See*, Transcript, docket no. 17A.

### I. Jurisdiction and Procedure

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) as a matter arising under Section 362(e) of the Bankruptcy Code, 11 U.S.C. § 362(e). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### II. Background

The Debtor executed a mortgage promissory note in the amount of $13,000.00 over a residential real property located in Vega Baja, Puerto Rico. The Debtor defaulted on the agreement and the Movant filed a complaint on July 17, 1996 in the District Court of Puerto Rico, Vega Baja Part, for the collection of monies and ordi-

nary foreclosure of the mortgage note. On June 23, 1997, the Court entered judgment in favor of the Debtor. Thereafter, the Movant filed a motion requesting execution of judgment by way of a public sale of the mortgaged property. On October 30, 1998, the Superior Court of Puerto Rico, Vega Baja Part, entered an order directing the Clerk of the Court to issue a writ of execution ordering the Marshal to sell the property in a public auction and to pay the Movant with the proceeds of said sale. On February 12, 1999, the Clerk issued the aforementioned order providing that the proceeds of the public sale be used to pay the Movant the amount of $4,807.47 in principal, a ten percent interest rate calculated from December 1st, 1995 until the date in which payment is fulfilled, and $1,300.00 in costs and attorneys' fees. The writ also indicated that the minimum price at which the property could be sold was $15,000.00. On March 10, 1999, the Marshal issued an edict notifying the Debtor, his wife Carmen Arroyo Rosario, and the public in general that the Property would be sold in a public auction scheduled for June 4, 11 and/or 18, 1999, in accordance with Articles 220 and 149 of the Mortgage Law of Puerto Rico, P.R. Laws Ann. tit. 30 §§ 2720, 2473, and Article 188.1 of the Mortgage Regulation. The edict also called for publication in a newspaper and its posting in public places. The Marshal celebrated the public sale as scheduled. According to the auction minutes prepared and signed by the Marshal, a second auction was held on June 11, 1999, in which the Movant, represented by Samuel Lugo, bid the sum of $11,152.39, and the Marshal awarded the property to the Movant for this amount. On July 7th, 1999, a deed of judicial sale was executed by the Marshal and the Movant.

Thereafter, on November 2nd, 1999, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. The Debtor scheduled the Property, subject of the foreclosure, as property of the estate and filed a plan proposing to pay the debt in full and interests at eight per cent (8%) APR.

On December 8, 1999, the Movant filed a motion for relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), arguing that the Property is not property of the estate because he acquired title to the Property before the Debtor filed his bankruptcy petition. The Movant now seeks to conclude the eviction proceedings. The Debtor opposed the motion for relief from stay arguing that the judgment of foreclosure proceedings and the sale in public auction of the Property are null and void because they violate the local statutes governing said proceedings.[1] Consequently, the Debtor claims that the real property is still property of his bankruptcy estate and that the mortgage may be assumed in bankruptcy.

On January 4th, 2000, the Court held a preliminary hearing on the Movant's motion for relief from stay. At the hearing, the Court heard arguments from the Movant and the Debtor. Upon review of the evidence submitted, the Court concluded that the property was validly auctioned and transferred pre-petition and, consequently, is not property of the estate. Moreover, the Court held that any challenge to the state court judgment should be brought before the state court and not before this Court as a defense to the Motion to Lift Stay.

## IV. Controversy

The controversy in this case is two-fold. First, we must determine whether the Property, which was sold in a public auction prior to Debtor's petition for bankruptcy, is property of the estate. Second, we must analyze whether the Debtor's challenge to the validity of the state court judgment and the foreclosure sale held

---

1. In his motion, the Debtor simply states that the "[j]udgment of foreclosure proceedings and sale of property are void and null because of failure to comply with local law governing said proceedings." Debtor fails, however, to support this allegation.

accordingly may be asserted as an affirmative defense to a motion for relief from stay.

## V. Discussion

 Upon review of the motion for relief from stay, the opposition, and the documents submitted into evidence, this Court concludes that the Property is not property of the estate because title was conveyed to the Movant prior to the Debtor's petition for bankruptcy. In previous unpublished decisions, which are attached to the present memorandum, this Court has held that in a mortgage foreclosure sale, title to the property is transferred to the purchaser when the deed of judicial sale is executed. In *In re Del Llano*, Case No. 88–01328, docket no. 23, we explained:

> As a general rule a bidding process concludes with the "fall of the hammer or by any other visible means signifying to the bidder that he is entitled to the property on paying the amount of his bid according to the terms of the sale." 7 Am.Jur.2d § 27, at 385. Thus, once the auctioneer has accepted the offer of the highest bidder, it is understood that the property has been adjudicated and the acceptance of bids is closed. However, the acceptance of the bid gives rise to a sale contract between the auctioneer and the bidder.
>
> Under the law of Puerto Rico, the contract of sale has two stages which must be complied with in order for the execution of the sale to be valid. In *Valcarcel v. Sancho, Treasurer*, 61 P.R.R. 207 (1942), the Supreme Court of Puerto Rico describes these two stages as follows:
>
>> "The first one is the perfection of the contract, which arises when the contracting parties agree upon the thing which is the subject matter of the contract and upon the price, even if neither has been delivered. [P.R. Laws Ann. tit. 31 § 1339]. Once this perfection has taken place, the contract is binding on both of them, entitling the parties reciprocally to demand the fulfillment of the contract. Notwithstanding this, the ownership of the thing sold is not conveyed to the purchaser until the second stage takes place, that is, the consummation, which takes place at the time of the delivery of the thing sold." *Valcarcel v. Sancho, Treasury*, 61 P.R.R. 207, 210–11 (1942).

In Puerto Rico, the delivery is made at the time of the execution of the deed. *Valcarcel, supra*, 61 P.R.R. at 211. In a judicial sale, when the real property is sold, the marshal and or officer in charge of the judicial sale shall execute a public deed in favor of the purchaser. Rule 51.8(d) of the Puerto Rico Rules of Civil Procedure, Title 32, L.P.R.A. Thus, two events must have occurred in order to consummate the judicial sale: the adjudication of the sale and the execution of the deed.

*Id.*, at 4–5. Similarly, in *Property Concepts, Inc. v. Hernández Collazo, et al. (In re Hernández Collazo)*, Adv. No. 92–0138, docket no. 17, we held:

> Under the laws of Puerto Rico a sale of real property is consummated and perfected by the delivery of the property to the purchaser and by the execution of a public deed in its favor. Rule 51 of the Rules of Civil Procedure of Puerto Rico, 31 LPRA 3811. Rule 51.3 states that an order for the judicial sale of a property has the effect of a writ directing the physical delivery of the possession. Rule 51.8(d) provides that in a judicial sale of real property the officer in charge of the sale need only execute a public deed to constitute the delivery of the property. Such a proviso contrast with the sale of personal property which requires actual delivery to the purchaser. The proposition is consonant with 31 LPRA 3811 which provides that when the sale of a property is through a public deed, the execution of the public deed shall constitute delivery of the property.

*Id.,* at 5–6. In the case at bar, the Property was sold at a public auction on June 11, 1999, pursuant to an order of the Superior Court of Puerto Rico dated October 30th, 1998 and a judgment of the District Court dated June 23rd, 1997. At the judicially ordered public sale, the Property was adjudicated to the Movant. Thereafter, on July 7th, 1999, a deed of judicial sale was executed. In accordance with our previous holding in *Del Llano* and *Property Concepts*[2], we conclude that title to the Property was conveyed to the Movant on July 7th, 1999, the date when the deed of judicial sale was executed and conveyance of the Property was consummated. Consequently, the Debtor did not have an interest in the Property when he filed his petition for bankruptcy on November 2nd, 1999. Because the Debtor's ownership rights were extinguished and the Debtor was divested of legal title to the Property prior to the filing of his petition for bankruptcy, we Court conclude that the Property is not property of the Debtor's estate and that the Movant is entitled to relief from the automatic stay to continue state court proceedings to evict the Debtor from the Property.

The Debtor nevertheless contends that the Movant's title to the Property is null and void because the Puerto Rico District Court's judgment and the subsequent foreclosure sale violated the local statutes governing those proceedings. Thus, the Debtor requests that the Court deny the motion for relief of stay. Essentially, there are three grounds upon which the Debtor challenges the validity of the Movant's title. First, he argues that the District Court's judgment did not specifically state that the plaintiff (now Movant) would recover his debt through the sale of the encumbered property, pursuant to Rule 51.3 of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann. tit. 32, App. III, R. 51.8. Transcript, at 10–11, lines 14–22 & 2–9. Second, the Debtor claims that the Superior Court's order directing the sale of the Property and the subsequent public auction are invalid because the District Court's judgment referred only to the collection of money and not to the foreclosure of the Property. Transcript, at 6, lines 16–22. Third, the Debtor alleges that the Movant does not have any interest in the Property because the successful bidder was not the Movant, but a person called Samuel Lugo. Transcript, at 9–10, lines 21–24 & 1–7. This Court will not further entertain the merits of Debtor's arguments because they refer to issues which, under the circumstances, are beyond the scope of a Section 362 hearing.

 A hearing on relief from the automatic stay is typically not the proper forum for the assertion of defenses and counterclaims against the party seeking relief. In an automatic stay proceeding, the Court should limit itself to a narrow frame of inquiry. The legislative history

---

**2.** In *R & G Mortgage Corp. v. Franceschi, et al. (In re Franceschi),* Case No. 98–07017(GAC), Docket no. 13A, Chief Judge Gerardo Carlo summarizes the decisions of the three bankruptcy judges in this District due to the discrepancy in opinions regarding the issue of when title to a property is conveyed to the purchaser. In *In re Barnes Rangel,* Case No. 95–00022, Docket No. 23A, *In re Otero Rivera,* Case No. 94–03898, Docket No. 18, and *In re Franceschi, supra,* Judge Carlo held that title passes when the auction is concluded and the property is awarded to the highest bidder. In *In re Rivera Nieves,* Case No. 94–01785(SEK), Docket no. 39A, Judge de Jesús rejects the position that consummation of the sale occurs when the Marshal awards the mortgage property to the highest bidder during the judicial sale. According to Judge de Jesús, adjudication by the Marshal is not a symbolic act of delivery, but rather an "act whereby this fictitious seller agrees to convey the real property for a particular price to a particular bidder." *Id.,* at 5. Similarly, in *Property Concepts, supra,* this Court held that under the laws of Puerto Rico a sale of real property is consummated and perfected by the delivery of property to the purchaser and by the execution of a public deed in its favor. Despite the difference in opinions, all three judges would agree that in the present case, title to the property was conveyed to the Movant because the Debtor filed his petition for bankruptcy after the public sale was held and the deed was executed.

makes it clear that other related claims should not be pleaded or heard together with a request for relief from the stay:

> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 344 (1977). S.Rep. No. 95–989, 95th Cong., 2d Sess. 53, 55 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 6300. Shortly after the Code was enacted, a view developed holding that the issues considered at a Section 362 hearing were limited strictly to the adequacy of protection, equity, and the necessity to an effective reorganization. These courts held that consideration of affirmative defenses and counterclaims was improper in relief from stay litigation. *See, e.g., In the Matter of Vitreous Steel Products Company,* 911 F.2d 1223, 1231–32 (7th Cir.1990); *In the Matter of Johnson,* 756 F.2d 738, 740 (9th Cir.1985), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Although a more expansive approach to what may be asserted in opposition to a relief from stay motion has evolved[3], the First Circuit Court of Appeals has adopted the more restrictive approach. In *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26 (1st Cir.1994), the Court of Appeals explained:

> ... *we find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and adopt the Vitreous Steel court's holding that a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate.* The statutory and procedural schemes, the legislative history, and the case law all direct that *the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims.* Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the stay.

*Id.,* at 33 (emphasis ours).

Thus, in the present case, the only issue before this Court is whether the Movant has a *colorable* claim to the Property. Having examined the evidence presented and hearing the arguments of both parties, this Court concludes that the Movant has met his burden of proof in demonstrating that he acquired title to the property prior to the Debtor's petition for bankruptcy. Debtor's defenses and counterclaims attack the validity of the Movant's claim, nonetheless. In view of the First Circuit Court of Appeals' opinion in *Grella v. Salem, supra,* we hold that the appropriate forum for the Debtor's affirmative defenses and counterclaims is the trial court in the foreclosure action.

The Debtor, nevertheless, submits that "by denying Debtor the right to appear before this Court in a final hearing and this Court not entertaining the facts that will render the judicial sale null and void, constitutes a violation of Debtor's rights because it's the taking of his property without having a fair hearing...." Tran-

---

3. *In re Poughkeepsie Hotel Associates,* 132 B.R. 287, 291 (Bankr.S.D.N.Y.1991) (citing cases supporting the expansive approach).

script, at 14, lines 10–15. Debtor's argument is without merit. First, Section 362(e) of the Bankruptcy Code, 11 U.S.C. § 362(e), states that the court may continue the stay in effect after holding a preliminary hearing only if it finds that there is reasonable likelihood that the party opposing relief will prevail at the conclusion of the final hearing. 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.08[4], at 362–106. The alleged defect in title do not appear to be of such serious magnitude as to render Movant's title null and void. First, the judgment entered by the District Court grants the complaint, and the complaint calls for the specific actions including the ones that the Debtor claims were not included in the judgment. Moreover, the first sentence of the judgment expressly states that the case being considered is about collection of monies and foreclosure of property. Similarly, we are not convinced that the public auction is void because the successful bidder was not the Movant, but an employee of the office of his attorney who appeared on Debtor's behalf. The auction minutes auction and the deed of judicial sale specifically state that the successful bidder was the Movant, represented by Mr. Lugo.

Second, by lifting the automatic stay, the Court does not deprive the Debtor from legal recourse. The Court is allowing the Movant to continue state court proceedings in order to evict the Debtor from the Property. It is in said proceedings that the Debtor can raise his defenses and counterclaims.

Third, in the hearing, we instructed the Debtor's counsel that if he thinks that the Debtor is entitled to the turnover of the Property, he should file an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure. Transcript, at 12, lines 4–10.

Fourth, a res judicata determination of the issues addressed by the Debtor is inappropriate in a motion for relief hearing. *Collier on Bankruptcy* ¶ 362.08[4], at 362–110 (citing *Grella, supra,* 42 F.3d at 32).

Although this Court considers the counterclaims raised by the Debtor, we are not authorized to a res judicata determination of such claims on their merits. *In re Gellert,* 55 B.R. 970, 974–75 (Bankr.D.N.H. 1985).

The Debtor also argues that the allowance of the Movant's motion for relief from stay would violate Debtor's rights because it constitutes a taking of his property without having a fair hearing. Transcript, at 4, lines 23–25. Nevertheless, the Court has already held that the Property is not part of Debtor's estate. Therefore, there is no taking of his Property. Moreover, it is not proper to adjudicate the validity or avoidability of a claim in a proceeding for lift of stay. As the First Circuit explained in *Grella, supra,* "[a]s a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a colorable claim; thus, a decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere." *Grella, supra,* 42 F.3d at 34.

## VI. Conclusion

In view of the foregoing, this Court concludes that the Property adjudicated to the Movant is not property of the estate pursuant to Section 541(a) of the Bankruptcy Code. Therefore, the Movant is granted relief from the stay in order to continue state court proceedings to evict the Debtor from the Property. The Debtor may raise his defenses and counterclaims in those proceedings.

WHEREFORE IT IS ORDERED that the Movant's motion for relief from the automatic stay be and is GRANTED. The Clerk shall provide notice of this order to all parties in interest.

SO ORDERED.