Robert PEREZ, a/k/a Robert
Perez, Jr., Debtor.

Robert Perez, Appellant,

v.

Deutsche Bank National Trust Compa-
ny, as Trustee on behalf of Certificate
Holders of Morgan Stanley ABS Capi-
tal I Inc. Trust 2003-NC10, Mortgage
Pass-Through Certificates, Series
2003-NC10, Appellee.

BAP NO. MS 16-007
Bankruptcy Case No. 15-30108-MSH

United States Bankruptcy Appellate Panel
of the First Circuit.

Signed September 28, 2016

Louis S. Robin, Esq., on brief for Appel-
lant.

Lindsay Kyser, Esq., Reneau J. Longoria, Esq., Brian C. Linehan, Esq., and John A. Doonan, Esq. on brief for Appellee.

Before Lamoutte, Deasy, and Cary, United States Bankruptcy Appellate Panel Judges.

Cary, U.S. Bankruptcy Appellate Panel Judge.

Robert Perez (the "Debtor") appeals the order denying his Motion for Finding of Breaches of the Automatic Stay and Damages (the "Motion"). Despite the overwhelming number of courts that have ruled to the contrary, the Debtor sought to have Deutsche Bank National Trust Company, as Trustee on behalf of Certificate Holders of Morgan Stanley ABS Capital I Inc. Trust 2003-NC10, Mortgage Pass-Through Certificates, Series 2003-NC10 (the "Creditor"), sanctioned for having twice postponed its foreclosure sale post-petition. For the reasons set forth below, we conclude that we are bound by First Circuit precedent and therefore **AFFIRM**.

## BACKGROUND

The Debtor entered into an adjustable rate mortgage loan with New Century Mortgage Corporation in July 2003 which loan was later assigned to the Creditor. The Debtor defaulted on the loan in 2010 and the Creditor subsequently commenced foreclosure proceedings. The initial foreclosure sale was scheduled for October 16, 2013, but after several postponements, it was rescheduled to February 10, 2015, at 10:00 AM.

On Sunday, February 8, 2015, the Debtor filed a petition under chapter 13. Counsel for the Debtor left a voice message to that effect at the office of the Creditor's counsel. Given a state of emergency due to extreme weather, however, the Creditor's counsel did not receive the voice message until after 12:00 PM on Tuesday, February 10, 2015.

In the meantime, at 10:00 AM on February 10, 2015, a representative for the Creditor was present at the Debtor's property to continue the foreclosure sale. The Debtor's ex-wife, who was at the property, called the Debtor to express her concern that the sale was going forward. The Debtor then called his counsel who explained that the Creditor's action was standard protocol following the filing of a bankruptcy case. The Debtor's counsel contacted the Creditor that afternoon in an effort to clarify the situation. The Creditor offered that, due to the inclement weather, it had rescheduled the foreclosure sale for one day, at which time it planned to reschedule the auction for at least thirty additional days.

On February 11, 2015, the Creditor's auctioneer appeared at the property and postponed the foreclosure sale until April 15, 2015. In her Foreclosure Postponement Description Form, the auctioneer reported there were no witnesses to the postponement. The Creditor later cancelled the sale.[1]

On June 30, 2015, the Debtor filed the Motion. The Debtor alleged, inter alia, that the Creditor's two post-petition continuances of the foreclosure sale violated § 362(a)(1),[2] the continuances revived financial pressure on him, acted to harass and damage him, caused him to lose one day of pay and incur added attorneys' fees, disturbed his ex-wife, and, as a result,

---

1. The bankruptcy court made this finding which the Debtor did not dispute. It is unclear when the Creditor cancelled the foreclosure sale.

2. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

"they" were entitled to damages for injuries including costs and legal fees.[3] In the accompanying memorandum, the Debtor explained why applicable First Circuit precedent and the majority of case law was wrongly decided with respect to the issue of whether a post-petition postponement of a foreclosure sale is a violation of the automatic stay. The Debtor also appended to the Motion one affidavit, that of his ex-wife. In it, she explained she was "taken aback" by the events and it worried her that "a bank representative gave the impression that a foreclosure sale was to take place."

In its response and memorandum of law in opposition, the Creditor explained it did not know of the Debtor's case "prior to initially postponing the foreclosure sale." It admitted scheduling the foreclosure sale for February 10, 2015, and postponing it until February 11, 2015. It also admitted postponing the February 11, 2015 foreclosure sale until April 15, 2015, and subsequently cancelling the sale. The Creditor further denied that the postponements violated § 362, that they were intended to harass or damage the Debtor, or that they gave rise to the same financial pressures the Debtor experienced prior to filing bankruptcy. Thus, it argued the Debtor was not entitled to any relief.

The bankruptcy court held a non-evidentiary hearing on September 9, 2015, to consider, inter alia, the Motion and the Creditor's opposition. The Creditor's counsel described the typical procedure an auctioneer follows in making a public proclamation when a sale is postponed. She represented that the Creditor's foreclosure practices were not violative of the Bankruptcy Code, and explained the postponements served the purpose of preserving the status quo until the automatic stay is lifted.

The Debtor's counsel effectively conceded that the Creditor did not have notice of the bankruptcy before the first continuance, and that while the continuance was a violation of the automatic stay, it was not willful.[4] He maintained, however, that the second continuance was a willful violation of automatic stay. The Creditor's counsel denied these arguments, and agreed with the Debtor that an evidentiary hearing was unnecessary.

The bankruptcy court took the matter under advisement and subsequently issued an order denying the Motion after finding and ruling that: (a) the postponement of the foreclosure sale on February 10, 2015, did not violate the automatic stay because the Debtor did not establish the Creditor had knowledge of the bankruptcy filing at that time; (b) the postponement of the foreclosure sale on February 11, 2015, did not violate the automatic stay as it "merely preserved the status quo"; and (c) the Debtor failed to demonstrate the Creditor intended to harass the Debtor.

The Debtor filed a timely appeal. The Debtor listed two issues for appeal, both of which concerned whether the bankruptcy court erred in denying his "request for finding of breaches of the automatic stay provisions of the Bankruptcy Code ...."

On March 9, 2016, the bankruptcy court dismissed the Debtor's main case for failure to maintain plan payments.

---

**3.** In the Motion, the Debtor cited to §§ 105 and 362(h) in support of his request for damages. Given the subject of this appeal and the case law upon which the Debtor relies, we presume that he was seeking damages under § 362(k) which was formerly numbered § 362(h).

**4.** The Debtor did not explicitly concede the issue but when the bankruptcy court summed up the facts as reflecting that the Debtor could not establish the Creditor knew about the bankruptcy filing on February 10, 2015, the Debtor did not disagree.

## JURISDICTION

The Panel may hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. See 28 U.S.C. § 158(a)(1). An order is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (1st Cir. BAP 1998) (citations omitted) (footnote omitted). The Panel has concluded that a bankruptcy court's order deciding whether a violation of the automatic stay occurred and whether sanctions for the violation are warranted is a final appealable order. See Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 400 (1st Cir. BAP 2004). It has also ruled that the dismissal of an underlying case does not otherwise moot an appeal of an order regarding a stay violation motion. See Jones v. Boston Gas Co. (In re Jones), 369 B.R. 745, 748 (1st Cir. BAP 2007).

Therefore, the Panel has jurisdiction to consider this appeal.

## STANDARD OF REVIEW

The Panel reviews a bankruptcy court's findings of fact for clear error and conclusions of questions of law de novo. See Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577 (1st Cir. BAP 2012) (explaining bankruptcy court's determination as to whether the automatic stay provisions were violated involved question of law subject to de novo review) (citation omitted); see also Douglas v. Kosinski (In re Kosinski), 424 B.R. 599, 607 (1st Cir. BAP 2010) (explaining "a finding is clearly erroneous when, although there is evidence to support it, the Panel is left with the definite impression that a mistake has been made") (citation omitted).

## DISCUSSION

### I. The Statute

Section 362(a)(1) provides, in relevant part, that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).

Section 362(k)(1) further provides: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

"A debtor seeking damages under [§ 362(k)] bears the burden of proving by a preponderance of the evidence . . . three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." In re Slabicki, 466 B.R. at 577–578 (citation omitted).

### II. Arguments of the Parties

In his brief, the Debtor starts with the proposition that the stay provisions must be interpreted broadly, similar to other

broad protections offered in the Bankruptcy Code such as § 542(a). He then argues the bankruptcy court erred in concluding the two post-petition postponements of the foreclosure sale were not a violation of § 362 for three reasons. First, the plain language of the statute is unambiguous and the definition of a "continuation" must include a foreclosure postponement. Second, the bankruptcy court erroneously adopted the principle that a postponement of a foreclosure action is only "maintaining the status quo." Lastly, both postponements were violations of the automatic stay. Thus, the Debtor contends, the Panel must conclude the bankruptcy court erred in denying the Motion.

As to his first argument, the Debtor opines the plain reading of the statutory language is unambiguous concerning the meaning of the term "continuation" and the inquiry into whether a postponement is a continuation violative of the stay should stop there. In support, he cites to cases such as United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (explaining inquiry ends when statutory language is plain). He offers that this analysis would be consistent with the oft-cited legislative history that provides: "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." H.R. Rep. No. 595, 95th Cong, 1st Sess. 174-175 (1977). Interpreting "continuation" to not include a postponement, in the Debtor's estimation, disregards the plain language

of the statute and violates Supreme Court guidance on statutory interpretation.

Next, the Debtor contends the bankruptcy court, much like the Panel in Witkowski v. Knight (In re Witkowski), 523 B.R. 291 (1st Cir. BAP 2014), erred in ruling a post-petition foreclosure postponement is not a continuation of an action but simply an act of maintaining the status quo.[5] The error, in his opinion, is that the phrase "maintaining the status quo" is neither in the statute (including its many exceptions) nor in the legislative history. Instead, it is derived from In re Decker, 465 F.2d 294 (3d Cir.1972), wherein the court used the language to describe the extent of the stay provisions under the Bankruptcy Act.[6] He contends the use of the phrase under the Act indicated a goal that the stay be applied broadly but, with Bankruptcy Code cases, it has the effect of restricting the application of the stay. This, he argues, is contrary to the legislative history, the plain meaning of the statute, and his view that conflicts in the Bankruptcy Code should be resolved in favor of a debtor.

As to his final argument, the Debtor acknowledges that the Creditor was unaware of the bankruptcy filing before the first postponement, but asserts both postponements were nonetheless violations of the stay.

In response, the Creditor first explains that in a non-judicial foreclosure state, such as Massachusetts, there is no foreclosure litigation that is stayed upon the bankruptcy filing. Instead, a postponement serves to suspend the foreclosure process.

---

5. In that case, the Panel cited much of the case law set forth herein and explained it agreed that continuation "connotes an advancement of an action or proceeding." 523 B.R. at 300. It ruled a postponement from month to month does not constitute an advancement, rather it maintains the status quo without prejudice to the debtor. Id.

6. The Decker court wrote of the stay provisions: "It must be emphasized, however, that the stays authorized by Sections 414 and 428 [of the Act] are in the nature of temporary injunctions designed to maintain the status quo, and that they are not coextensive with the right to ultimately decide issues of ownership." 465 F.2d at 297 (citation omitted).

The Creditor then agrees with the Debtor that the statute is unambiguous but argues a continuation must be an action that advances a proceeding. The postponements of the foreclosure sale did not violate the stay provisions, it offers, because such acts merely suspend the action rather than advancing it. In support, it cites to the discussion in Taylor v. Slick, 178 F.3d 698, 702 (3d Cir.1999), and the "sheer volume of authority." See, e.g., id.; see also Hart v. GMAC Mortg. Corp. (In re Hart), 246 B.R. 709, 741 n. 29 (Bankr.D.Mass.2000).

The Creditor also maintains it acted in accordance with the accepted standards in the District of Massachusetts and contends that the postponements did not have an effect on the parties' interest in the property and prevented the increase in the debt that would have resulted had the foreclosure sale been cancelled. In support, the Creditor cites to Zeoli v. RIHT Mortg. Corp., 148 B.R. 698 (D.N.H.1993).[7] Lastly, the Creditor argues that even if the Panel were to conclude it violated the stay, the Debtor cannot prevail because he failed to demonstrate he suffered damages.

In his reply brief, the Debtor emphasizes two acts occur with respect to a postpetition postponement. The first is the suspension of the action per the stay and the second is the scheduling of the new date— an action by a creditor. The Debtor then disagrees with the reasoning in Taylor v. Slick because it violates several principles of statutory construction. Lastly, he suggests that describing the action as a postponement is incorrect because the foreclosure has already been stayed by the filing of the petition.

## III. Analysis

To start, we must clarify the issue before the Panel. By the Motion, the Debtor sought damages for contempt and violations of the automatic stay pursuant to §§ 105 and 362(k).[8] The former statute allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" and the latter permits an assessment of damages based upon a willful violation of the automatic stay.

In In re Heghmann, the appellant argued that the bankruptcy court inappropriately converted her contempt motion into a damages motion. We wrote:

> Although the bankruptcy court may have the power to punish stay violations under its § 105(a) contempt powers, see In re Power Recovery Sys., Inc., 950 F.2d 798, 802 (1st Cir.1991), the assessment of damages under § 362(h) was a proper remedy and did not prejudice the Debtor. First, the standard under § 362(h) is far less stringent than the standard for determining damages for contempt. See Shadduck v. Rodolakis, 221 B.R. 573 (D.Mass.1998) (noting that

7. In Zeoli, the district court reversed the bankruptcy court's ruling that the postponement violated the stay. The district court reviewed the legislative history and explained that case law supported the argument that while a postponement is an act, it is not a continuation of a proceeding. Specifically, the court described the postponement as "an act in preservation of a stayed proceeding." 148 B.R. at 701. The court emphasized that had the creditor done nothing, the foreclosure proceeding would have been expunged, "disrupting the status quo to the economic detriment of [the creditor], while conferring no discernable benefit on the debtor." Id. The court also mentioned that the debtor would be negatively affected were the foreclosure expunged. See id.

8. The Debtor did not seek any other relief. See, e.g., Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir.1997) (explaining actions taken in violation of the automatic stay are void); Gordon v. White (In re Morgenstern), 542 B.R. 650 (Bankr.D.N.H. 2015) (describing proceeding in which trustee sought declaration post-petition action was void and damages under § 105(a)).

the standard for determining contempt under § 105(a) requires a showing of malicious intent or lack of good faith, which is not necessary under § 362(h)). Moreover, since the Debtor's Motion for Contempt requested damages for alleged violations of the automatic stay, the bankruptcy court did not err in construing the motion in accordance with the relief requested.

316 B.R. at 404 n. 8.

■ Similarly, the bankruptcy court in this case construed the Motion as one brought solely under § 362(k). In his pleadings below and in this appeal, the Debtor concentrates his arguments on the issue of whether a post-petition postponement is violative of the automatic stay. Other than mere mention, he does not address in any detail why he is entitled to relief under § 105(a) and he does not argue that the bankruptcy court erred in treating the Motion as one brought solely under § 362(k). Accordingly, he has waived these arguments. See Furness v. Wright Med. Tech., Inc. (In re Mecurio), 402 F.3d 62, 64 n. 1 (1st Cir.2005) (explaining failure to adequately brief or argue issue results in waiver); Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 511 (1st Cir. BAP 2009) (explaining appellant waives argument if only raised in a perfunctory manner below).

To obtain relief under § 362(k), the Debtor had the burden to demonstrate, inter alia, that the Creditor's actions were willful. See, e.g., Fleet Mortg. Grp., Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 269 (1st Cir.1999). Because the Debtor ac-

knowledges in his brief that the Creditor did not have notice of the bankruptcy filing prior to the first postponement, he cannot argue on appeal that the bankruptcy court erred in finding the first postponement was not a willful violation. See, e.g., McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 330 (1st Cir.2004) (explaining to prevail on damages request debtor must show violation "committed with knowledge of the pendency of the bankruptcy case."). Accordingly, the only issue before us is whether the bankruptcy court erred in concluding the Creditor did not violate the automatic stay when it announced the second postponement.

The Debtor contends that because a postponement is clearly a continuation as that term is defined, we must ignore our precedent and the majority case law and rule that any post-petition postponement violates the automatic stay. In response to the Panel's questions to the Debtor at oral argument, the Creditor started its presentation by arguing that we are constrained by applicable First Circuit precedent to rule against the Debtor. We agree.

In Martir Lugo v. De Jesus Saez (In re De Jesus Saez), 721 F.2d 848 (1st Cir. 1983), the debtor filed for relief not long after her second mortgagee obtained a default judgment against her. Id. at 849. Two months later, on the day the mortgagee conducted an unsuccessful public auction of the debtor's house, the mortgagee received his first notice of the debtor's bankruptcy filing. Id. at 849–50. The mortgagee filed for relief from the automatic stay and while that motion was pending,[9] the bankruptcy court dismissed the case for failure

---

**9.** The bankruptcy court explained that the District Court of Bayamón had issued a judgment in the foreclosure proceeding pre-petition, and post-petition it issued a writ of execution. In re De Jesus Saez, 13 B.R. 605, 606 (Bankr.D.P.R.1981). "Pursuant to the writ, the District Court Marshall auctioned the property on April 1, 1981." Id. As there were

no bidders, the sale was vacated and a second public sale was set. Id. After the bankruptcy case was dismissed and before it was reopened, "the Marshall of the District Court of Bayamón executed a Judicial Sale Deed conveying title over said property to Carlos Martir." Id.

to prosecute. Id. at 850. The mortgagee proceeded with a successful auction and thereafter the court granted the debtor's motion for reconsideration of the dismissal. Id. Ultimately, the bankruptcy court voided the sale and awarded the debtor damages and attorneys' fees arising from the mortgagee's intentional acts. Id. The district court affirmed. Id. at 851.

In its opinion, the First Circuit ruled that it was error to void the sale and to award damages and fees as a result because there was no stay in effect on the date of the sale. Id. at 852. The court then specifically reviewed whether the bankruptcy court erred in sanctioning the mortgagee based upon his having rescheduled the auction and advertised the new sale date while the stay was in effect. Id. at 853.

The First Circuit wrote:

It is a closer question whether [the mortgagee] could be deemed to have contemptuously violated section 362 by proceeding, after learning of the chapter 13 petition, to schedule the sheriff's sale for May 2 and finally for May 14. [The mortgagee] did, however, petition the bankruptcy court to lift the stay and we have no reason to imagine he would have proceeded with the auction had the chapter 13 petition not been dismissed. Similar actions were held not to have violated the automatic stay in [First Nat'l Bank of Anchorage v. Roach] In re Roach, 660 F.2d 1316 (9th Cir.1981). Like the creditor in Roach, [the mortgagee] did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal. It was not shown that these preparatory acts either harassed de Jesus or revived "the financial pressures that drove [her] into bankruptcy." S. Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5840-41. Cf. In re Demp, 23

B.R. 239 (Bkrtcy.E.D.Pa.1982) (awarding attorneys' fees, but not damages, against creditor who posted notice of sheriff's sale on debtor's house).

Id.

In In re Roach, the secured creditor had commenced a non-judicial foreclosure pre-petition. 660 F.2d at 1317. After the debtor filed for relief, the creditor "published a notice of postponement of sale," and moved for relief from the automatic stay. Id. The court granted the motion, the property was sold, and the debtor sought an order invalidating the sale on the grounds that the creditor had "repeatedly violated the automatic stay provision by publishing several successive notices of postponement of sale." Id. The bankruptcy court ruled against the debtor.

On appeal, the Ninth Circuit reviewed the purpose of the automatic stay and explained it does not prevent all non-bankruptcy litigation from proceeding. Id. at 1319 (citing to an earlier Bankruptcy Act case in which court affirmed order allowing contempt hearing to proceed). The court then concluded that publishing postponement notices post-petition did not violate the stay because the creditor "merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision." Id.

In the Panel's prior decision on this issue, In re Witkowski, it described In re De Jesus Saez as being analogous but factually distinguishable. 523 B.R. at 299. Our ruling, based upon the weight of authority, was nonetheless consistent with that decision. Id. at 300. In In re Hart, the bankruptcy court concluded, in light of In re De Jesus Saez, its citation to In re Roach, and the significant number of cases that follow In re Roach, it was likely the First Circuit would hold the same if faced with a post-petition postponement of a foreclosure sale instead of a sheriff's sale.

In this case, we are confronted with the same issue as was present in In re Witkowski. Given the colloquy at oral argument, however, we are compelled to consider whether we affirm, not on the basis of the weight of authority but rather on the basis that In re De Jesus Saez is not simply analogous or persuasive but is controlling law which we must apply. See, e.g., Gately v. Comm. of Mass., 2 F.3d 1221, 1226 (1st Cir.1993) (ruling doctrine of stare decisis compels applying rule of law in future cases involving same legal question).

The only difference between the facts in In re De Jesus Saez and those in this case concerns the mechanism that brought the lender to the point of sale and postponement. In the former case it was a judicial foreclosure and here it was a non-judicial foreclosure. See, e.g., E. Renuart, Property Title Trouble in Non-Judicial Foreclosure States: The Ibanez Time Bomb?, 4 Wm. & Mary Bus. L. Rev. 111, 140-41 (2013) (explaining laws pertaining to mortgage foreclosures vary from state to state; some permit only judicial foreclosure, others non-judicial foreclosure, and others the choice between the two).

■ In Massachusetts, where the action described herein took place, mortgage foreclosures are non-judicial. See Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d 25 (D.Mass.2014). In Puerto Rico, where the events described in In re De Jesus Saez took place, the foreclosures are judicial. See, e.g., In re Martínez Ortiz, 306 B.R. 727, 730 (Bankr.D.P.R.2004).[10] One of the primary differences between judicial and non-judicial foreclosure procedures is court involvement. Both, however, have firm requirements related to the sale procedures. See generally A. Williams, Foreclosing Foreclosure: Escaping the Yawning Abyss of the Deep Mortgage and Housing Crisis, 7 Nw. J. L. & Soc. Pol'y 455, 465-66 (2012).

■ As noted above, In re De Jesus Saez addressed whether the act of postponing and re-advertising the sale post-petition violated the stay. It did not focus on the mechanism for the foreclosure (judicial vs. non-judicial foreclosure) likely because the procedure that got the parties to the point of a sale and postponement had no impact on the court's consideration of the creditor's action in rescheduling and re-advertising the sale. Similarly, here the mechanism the Creditor followed to arrive at the point of sale of the real estate and the subsequent post-petition postponements has no bearing on the issue of whether the postponements themselves violated the stay.[11] Instead, we look only to

---

**10.** There, the court described the procedure as follows:

> The Puerto Rico Mortgage Law, 30 L.P.R.A., governs the procedure to create a mortgage to secure a loan on a real property, and the procedure to foreclose the mortgage when the purchaser defaults on the terms and provisions of the mortgage note. Rules 51.3 and 51.8 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. III, R. 51, set forth the procedural requirements for the execution of judgment in a foreclosure action, that is, the notice of sale; the public auction; the judicial sale, and the execution of the certificate of sale. Strict compliance of these procedural requirements is of the essence in order to

> determine when and how the legal title is indeed transferred to the best bidder in a foreclosure action under the Puerto Rico Mortgage Law.

In re Martínez Ortiz, 306 B.R. at 730–31 (footnote omitted).

**11.** Indeed, at least three courts have described the First Circuit as having ruled on this issue. See, e.g., Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp. (In re Atlas Mach. & Iron Works, Inc.), 239 B.R. 322, 330–31 (Bankr.E.D.Va.1998), In re Dandridge, 221 B.R. 741, 745–46 (Bankr. W.D.Tenn.1998); and Tellier v. Fleet Nat'l Bank (In re Tellier), 146 B.R. 598, 606 (Bankr.D.R.I.1992).

whether the post-petition postponement of the foreclosure sale was a violation of the automatic stay. Given that this is the same issue that the First Circuit addressed in In re De Jesus Saez and identified in Roach,

we now hold that In re De Jesus Saez is not simply analogous but is, in fact, binding precedent. As such, we must conclude the second postponement was not violative of the automatic stay.[12]

12. Had we not so concluded, we would have otherwise affirmed for the reasons we set forth in In re Witkowski. That is, three courts of appeal have squarely ruled that a post-petition postponement of a foreclosure is not a continuation and therefore not violative of the stay and we find them persuasive. See Taylor, 178 F.3d at 702 (ruling postponement of sheriff's sale did not violate stay); Mason–McDuffie Mortg. Corp. v. Peters (In re Peters), 101 F.3d 618, 620 (9th Cir.1996) (rejecting BAP's ruling related to post-confirmation non-judicial foreclosure postponement and extensively quoting and adopting the reasoning of In re Barry, infra); In re De Jesus Saez, 721 F.2d at 853. Other than a handful of opinions that ruled otherwise (and were reversed on appeal) such as In re De Jesus Saez, infra, all other courts which have considered this issue have ruled similarly. See Worthy v. World Wide Fin. Servs., Inc., 347 F.Supp.2d 502 (E.D.Mich.2004), aff'd, 192 Fed.Appx. 369 (6th Cir.2006) (relying on case law particularly Taylor for its holding); First Union Nat'l Bank v. Clayton, No. 97–CV–620, 1998 WL 34007443 (M.D.N.C. Jan. 16, 1998) (reversing bankruptcy court which, while agreeing with the practicality of the majority view, held postponement violated stay); Wash. Mutual v. Fritz (In re Fritz), 225 B.R. 218, 220 (E.D.Wash.1997) (reversing bankruptcy court and ruling creditor did nothing more than maintain the status quo); Barry v. BA Props., Inc. (In re Barry), 201 B.R. 820, 824 (C.D.Cal.1996) (ruling because "positions of the debtor and creditor are fundamentally the same pre- and post-confirmation ... the Roach court's holding is applicable ...."); Zeoli, 148 B.R. at 701; In re Barnes, 119 B.R. 552, 556 (S.D.Ohio 1989) (ruling with little discussion that taking steps to reschedule and advertise a sheriff's sale did not violate automatic stay); Billings v. Portnoff Law Assocs., Ltd. (In re Billings), 544 B.R. 529, 536 (Bankr.E.D.Pa.2016) (ruling motions to postpone sheriff's sale not violative of stay as they maintained status quo), aff'd, 2016 WL 3344382 (E.D.Pa. Jun. 10, 2016); Henson v. Bank of Am., N.A. (In re Henson), 477 B.R. 786, 791 (Bankr.D.Colo.2012) (agreeing with majority and ruling postponement was not continuation); Angulo v. Emigrant Mortg. Co.

(In re Angulo), Adv. P. No. 09–0389, 2010 WL 1727999 (Bankr.E.D.Pa. Apr. 26, 2010) (same); Lynn–Weaver v. ABN–AMRO Mortg. Grp., Inc. (In re Lynn–Weaver), 385 B.R. 7, 11 (Bankr.D.Mass.2008) (cautioning that to "permit an indefinite number of continuances without judicial review of a prompt motion for relief from the stay is, in essence, to rewrite the statute, to expand a minor judicial accommodation for the extraordinary cases in which it was born into a loophole large enough to accommodate the proverbial Mack truck"); Michaud v. Ablitt & Caruolo, P.C., Adv. P. No. 05–1126, 2007 WL 135902 (Bankr.D.N.H. Jan. 16, 2007) (relying on earlier similar ruling which held initial postponement(s) not violative but counseling later ones may be); In re Fine, 285 B.R. 700, 702–03 (Bankr.D.Minn.2002) (ruling postponement of sheriff's sale was an act but not a continuation of a proceeding); In re Townsville, 268 B.R. 95, 125 (Bankr. E.D.Pa.2001) ("Under the holding in Taylor, the continuation of the Sheriff's Sale and oral notice of the new date did not violate the automatic stay because it merely preserved the status quo."); In re Heron Pond, LLC, 258 B.R. 529, 530 (Bankr. D.Mass.2001) (relying in large part on Citizens Bank of MD v. Strumpf, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), court held "a single continuance of a foreclosure sale following the filing of a petition is not a violation of the automatic stay if, before the continued sale date, the creditor filed an appropriate motion for relief from stay. In all other instances of continued sales, the cases will be treated individually."); In re Hart, 246 B.R. at 741 n. 29 (agreeing with majority, concluding First Circuit would rule similarly, and cautioning that "it is conceivable that harassment rather than the preservation of the status quo would be motivating the creditor and warrant judicial intervention"); Sherkanowski v. GMAC Mortg. Corp. (In re Sherkanowski), Adv. P. No. 00–1008–JMD, 2000 WL 33679425 (Bankr.D.N.H. Aug. 15, 2000) (ruling postponement not violative so long as seeking to maintain status quo); Roche v. Franklin First Fed. Sav. Bank (In re Roche), 228 B.R. 102, 103–104 (Bankr.M.D.Pa.1998) (agreeing with and recognizing every court that has studied this specific issue (and not

We are unpersuaded by the Debtor's argument that the majority case law was wrongly decided due to its erroneous reliance on the goal of maintaining the status quo. He contends that all references to the status quo stem from one case, In re Decker, *supra*, a case decided under the Bankruptcy Act. An Act case, he opines, is not applicable because when the Act was in effect, courts were trying to expand the scope of the stay and applying the phrase under the Bankruptcy Code only serves to narrow the scope of the stay. Once again, however, we disagree given the First Circuit's pronouncement on this issue. See I.C.C. v. Holmes Transp., Inc. (In re Holmes Transp., Inc.), 931 F.2d 984, 987 (1st Cir.1991) ("The automatic stay is designed to effect an immediate freeze of the status quo at the outset of the chapter 11 proceedings, by precluding and nullifying most post-petition actions and proceedings against the debtor in nonbankruptcy fora, judicial or nonjudicial, as well as most extrajudicial acts against the debtor, or affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest.")

Having determined that we are bound by In re De Jesus Saez, we must conclude that the second postponement did not violate the automatic stay. As such, we do not reach the issues of willfulness and damages.

## CONCLUSION

For the reasons set forth herein, we conclude the bankruptcy did not err in denying the Motion and therefore, **AF-FIRM.**

been reversed) has found no violation); In re Atlas Mach. & Iron Works, Inc., 239 B.R. at 333 (ruling postponement was a "defensive or responsive" action to maintain the status quo not an act in continuation of a proceeding);

United Mut. Sav. Bank v. Doud (In re Doud), 30 B.R. 731, 733–34 (Bankr.W.D.Wash.1983) (applying In re Roach to rule no stay violation either with postponement by publication or by announcement).